**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0246-19T2

CITY OF BURLINGTON,

    Plaintiff-Respondent,

v.

JOHN C. HALL,

    Defendant,

and

HELENE HALL,

    Defendant-Appellant.

_____

> Argued September 21, 2020 – Decided October 27, 2020
>
> Before Judges Rothstadt and Susswein.
>
> On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2710-17.
>
> Timothy P. Duggan argued the cause for appellant (Stark & Stark, PC, attorneys; Timothy P. Duggan, of counsel and on the briefs).

Salvatore J. Siciliano argued the cause for respondent (Siciliano & Associates, LLC, attorneys; Salvatore J. Siciliano and Michael J. Hagner, of counsel and on the briefs).

PER CURIAM

In this condemnation action, the property owner, defendant Helene Hall[1] appeals from the Law Division's June 26, 2019 order, granting plaintiff the City of Burlington's motion to reconsider a December 12, 2018 order that dismissed plaintiff's complaint. The motion judge reconsidered after he stated he never meant to dismiss plaintiff's complaint with prejudice and that the order was otherwise mistakenly entered. On appeal, defendant argues that the reconsideration order was a final order that was appealable as of right, that plaintiff did not meet the standard for reconsideration, and that the judge improperly granted reconsideration as before filing its complaint, plaintiff did not provide sufficient information about the subject property and did not participate in bona fide negotiations.

We disagree with defendant's contention that the order under appeal was a final judgment and for that reason we dismiss her appeal.

---

[1] Defendant John C. Hall, who is evidently another owner of the property, is not participating in this appeal.

A-0246-19T2

The facts derived from the motion record are summarized as follows. Defendant was the owner of real estate that abutted the Delaware River, which was designated on plaintiff's municipal tax map as Block 5, Lots 4 and 4.01. Defendant's residence was located on Lot 4, and it was separated from Lot 4.01, a vacant lot containing an unimproved dirt path, by an improved public roadway.

On November 7, 2016, plaintiff sent defendant a letter, informing her that plaintiff was "interested in acquiring [Block 5, Lot 4.01] as part of a proposed River Walkway project," and offering her $25,000 for the entire lot. Plaintiff indicated that the offer was being made in good faith, and that it was based upon an appraisal that was conducted by plaintiff's appraiser. If negotiations were to fail, plaintiff stated it would file a "condemnation action" to determine the appropriate price. It gave defendant twenty-one days to respond to the letter.

Included with the letter was the authorizing ordinance, the appraisal report, and a tax map. The ordinance specifically stated that plaintiff was taking Lot 4.01 to develop a public walkway along the river. The appraisal report stated that Lot 4.01 was .18 acres or 7,840 square feet, and the value of it was $25,000. The appraisal was based on an old tax map instead of a survey of the land, and it relied upon the sales comparison approach to valuation. There was no metes and bound description provided in any of the documents for Lot 4.01.

3

Defendant did not respond to plaintiff's offer to purchase in writing at any time. Any negotiations that occurred were through discussions between the parties, and they did not lead to any agreement.

On December 15, 2017, plaintiff filed a complaint alleging that part of defendant's property was necessary for public use and that it was "unable to acquire the property through negotiations with [defendant]." The complaint further stated that plaintiff provided "all elements required by law to constitute a 'reasonable disclosure' to [defendant] of the manner in which the amount of compensation offered by [p]laintiff was calculated." The complaint sought for the court to condemn the property and "appoint[] commissioners to fix the compensation required to be paid."

Attached to the complaint was a declaration of taking of "the land and premises described in the complaint," which it stated was "described and shown in Exhibits 'A' and 'B'" attached to the declaration. Exhibit A consisted of a schedule from a title policy that contained a metes and bounds description of what was described as Block 5 Lot 4 only. Exhibit B was a copy of the municipal tax map depicting the lots in Block 5.

At a case management hearing on February 7, 2018, defendant spoke about the history of "this small piece of land." She explained "[i]n 1987, two

4

adjacent lots which are smaller than ours were sold to the City for 30,000 and 35,000 . . . [w]e were offered at that time 25,000 which we rejected." Additionally, at that same hearing, Timothy Hall, defendant's son, explained that he and his mother met with plaintiff's counsel in February 2017.

At a second hearing on February 27, 2018, Timothy[2] disclosed that at the February 2017 meeting, defendant submitted three offers to plaintiff. According to Timothy, "[w]e offered a[n] opportunity for [plaintiff] to put in the sidewalk, while we continued to own the property . . . we put in an offer for [plaintiff] to buy the property for a dollar, or us to deed it to[plaintiff] . . . for free, with a tax consideration for [defendant]." Third, they offered a number "based on two Government numbers . . . [for] the two identical pieces of property in both size and nature . . . [d]irectly adjacent, that [plaintiff] purchased back in the late eighties." He further stated that the appraisal was for five thousand dollars, for what he described as a "quarter acre lot that is 140 feet of river front on the Delaware River." Timothy also explained that the entire property was 1.3 acres. When asked by the judge if she had any questions, defendant responded "[n]o, I would like to mention that this is the only private property in the City of

---

[2] We refer to defendant's son by his first name to avoid any confusion caused by his and his parent's common last name. No disrespect is intended.

A-0246-19T2

Burlington that still has land on the riverbank. And that the two portions which are of less acreage, which were sold in 1987, more than 30 years ago were sold for 30,000 and 35,000."

On May 22, 2018, defendant filed an answer in which she denied that "[p]laintiff negotiated in good faith" and stated that the appraisal did not include "an accurate or fair estimate[ion] of just compensation." She further denied that the "appraisal contain[ed] a legible or accurate description of the land to be taken."

Thereafter, plaintiff filed a motion to amend its complaint, which was granted on June 26, 2018. The order was entered after the motion judge conducted a hearing on May 25, 2018, at which defendant's counsel advised that defendant was "not opposed to the taking," and was only "really interested in . . . the valuation," which was being hampered by "a significant ambiguity in what [is] actually being taken." The problem raised by counsel was remedied by the judge proposing without objection that he enter an order granting the application to amend the complaint and the declaration of taking, directing that plaintiff deposit with the court the twenty-five thousand dollars it valued the subject property to be worth, appointing condemnation commissioners, ordering the parties to mediate, and scheduling a conferee call between counsel and the judge.

A-0246-19T2

Despite the motion judge's June 26, 2018 order that contained each of the provisions discussed at the May 25, 2018 hearing, plaintiff never amended its complaint and mediation never took place. Neither party appealed from that order nor sought leave to appeal.

On August 28, 2018, defendant filed a motion to dismiss the complaint. Thereafter, the parties made numerous submissions stating their positions as to whether plaintiff met the requisite conditions to filing a condemnation complaint that included a proper description of the property to be taken and proof that it had attempted to enter good faith negotiations. In defendant's papers, she argued the complaint had to be dismissed because it did not "accurately advise the property owner what property [was] being acquired," and it should have included a survey with a metes and bounds description of the subject property. Moreover, plaintiff's reliance on the tax map designation was inadequate, especially because the one used was out of date, and did not appropriately describe Lot 4.01 as it had been altered since the time of the older tax map. As such, there never were any good faith negotiations relative to plaintiff's acquisition of the property.

In plaintiff's opposition, it contended that it attempted to acquire the property for years, however, defendant never had a "desire to engage in

7

meaningful negotiations," and, instead, had "repeatedly sought to frustrate" plaintiff's attempts to acquire the land. According to plaintiff, since defendant did not dispute plaintiff's right to Lot 4.01, dismissing its complaint was baseless. It argued that while the physical dimensions of the lot may be disputed, it had always been clear that plaintiff sought to condemn all of Lot 4.01, and that defendant was unable to "point to a single counteroffer which was made to further negotiations with [p]laintiff."

Plaintiff also asserted there was no proof of any alleged alterations to the land or to "a general estimate of the alleged discrepancy in land size." Further, since defendant was only arguing that it sought just compensation for the land, that would be fixed at the next stage by the commissioners. As to the wrong description in the declaration of taking, plaintiff argued that while that was a mistake, defendant was fully aware that plaintiff sought to obtain Lot 4.01.

Prior to the motion judge rendering a decision, in November 2018, plaintiff filed and served an amended declaration, indicating the appropriate lot it sought to obtain. A survey was also completed, and according to the survey, the lot size was actually 6,143 square feet or .141 acres instead of 7,840 square feet or .18 acres as previously indicated. Plaintiff did not reduce its offer to purchase even though the land was less than what plaintiff had originally

8

believed. At this point, defendant made a counteroffer indicating she would accept $175,000 for Lot 4.01, which plaintiff rejected as unreasonable.

On November 30, 2018, the judge held a hearing and the parties advised him about plaintiff's recent amendment to the declaration and the preparation of the survey. The judge observed that he made provisions for the filing of amended pleadings in June 2018 and for mediation, and that without reason those events did not occur. Under the circumstances, the judge concluded that plaintiff had to "start all over" and "go through the process" by entering into bona fide negations and if not successful, by filing a new complaint. On December 12, 2018, the judge entered an order dismissing plaintiff's complaint and granted defendant leave to file for an award of attorney's fees, which he later awarded to defendant.[3] The order did not state that the dismissal was with or without prejudice.

Plaintiff filed its motion for reconsideration of the dismissal order, arguing that because Lot 4.01 was determined to be smaller than previously mentioned, it supported a finding that defendant "had been in possession of all relevant information to conduct good-faith negotiations at all times since the

---

[3] On December 17, 2018, the judge granted defendant's attorney's fees in the amount of $21,305 and costs of $435.90.

commencement of this action," especially since the offer given to defendant was higher than what it should have been. According to plaintiff, the "generous representation of the lot size" confirmed that the parties did participate in bona fide negotiations. Plaintiff also contended that the judge relied on facts that were not in issue, such as a dispute between the parties over a storm water drain, and that the judge's frustration with the parties' inability to settle was defendant's fault, as she unreasonably made a counteroffer of $175,000, demonstrating defendant's "unwillingness to amicably resolve this condemnation action." It also argued that the judge failed to appreciate significant evidence in the case, such as the fact that defendant was obtaining a better value for Lot 4.01 after it was determined the size of the lot was smaller than the tax map indicated.

Defendant opposed plaintiff's motion and argued that improperly sizing Lot 4.01 demonstrated the lack of information defendant had to appropriately participate in negotiations with plaintiff. She found the judge's decision on the motion to dismiss to be fully supported by the record. Defendant also contended that plaintiff failed to meet the standard for reconsideration as it only made the same arguments it made on the motion to dismiss and brought this motion because it was unhappy with the judge's decision.

A-0246-19T2

In its reply, plaintiff asserted that the reduction in Lot 4.01's size benefited defendant, as plaintiff overcalculated the size of the lot. Plaintiff argued that dismissing the complaint would be detrimental to both parties, as it would increase the legal bills and decrease the value of Lot 4.01. Further, plaintiff asserted that it was not attempting to relitigate any issues previously addressed, but instead was discussing issues the judge failed to consider in making his decision. It contended that defendant's argument relating to the amount in controversy is a red herring argument.

At oral argument, on February 15, 2019, the judge responded to the parties' contentions by agreeing with plaintiff that defendant knew exactly what property was at issue, but at the same time, he also understood that plaintiff made "technical violations," that also created an issue. At that point, the judge decided to adjourn the motion for reconsideration so defendant could obtain her own appraiser within the next two weeks. However, defendant never provided defendant with her appraisal.

The motion judge continued the hearing on July 26, 2019. At that time, the judge stated that he never intended his December 12, 2018 order to be a final decision. The judge specifically stated, "that any mistakes that were made were [his fault]," and that instead of considering arguments that the amount was

A-0246-19T2

excessive, he was going to grant plaintiff's motion for reconsideration, and "amend [his] previous decision to basically indicate . . . [that i]t should have been [dismissed] without prejudice with the direction of filing an amended pleading." This would allow plaintiff to amend its pleadings and then he would "direct . . . the condemnation commissioners [to] meet and consider the taking," in which defendant could offer evidence if she wanted. Once an award was decided, defendant could appeal that order.

The judge entered an order on August 5, 2019, granting plaintiff's motion, reinstating its complaint, vacating the order that granted defendant attorney's fees, and ordered that the condemnation process continue with a condemnation hearing. This appeal followed.

We begin our review by addressing defendant's contention that the judge's reconsideration order was a final order under N.J.S.A. 20:30-2(j), subject to direct appeal. She contends it was in that order that the judge "adjudicated [plaintiff's] right to take [defendant's] property and have the value determined by the commissioners under N.J.S.A. 20:3-12(b)." According to her contention at oral argument before us, the motion judge's June 26, 2018 order was merely a case management order that did not meet the statute's definition for a final adjudication. We disagree.

Appeals as of right are limited to final judgments. See R. 2:2-3(a)(1). "To be considered a final judgment appealable as of right, the order must generally dispose of all issues as to all parties." CPC Int'l, Inc. v. Hartford Accident & Indem. Co., 316 N.J. Super. 351, 365, 408 (App. Div. 1998). By statute, in a condemnation action there are two final judgments. As the Supreme Court has explained:

> A condemnation action involves the issuance of two final judgments by the Superior Court: one declares that "the condemnor is duly vested with and has duly exercised its authority to acquire the property being condemned," N.J.S.A. 20:3-8, N.J.S.A. 20:3-2(j), and appoints "three commissioners to determine the compensation to be paid by reason of the exercise of such power." N.J.S.A. 20:3-12(b). The other deals exclusively with the valuation of the condemned property. N.J.S.A. 20:3-12(g)-(h).
>
> [Hous. Auth. of New Brunswick v. Suydam Inv'rs, LLC, 177 N.J. 2, 16–17 (2003).]

See also State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 5–6 (App. Div. 2013). Under N.J.S.A. 20:3-2(j), "[a]ll other judgments shall be interlocutory or final, according to law, or as may be prescribed by the rules."

Here, adjudication of the right to condemn occurred on June 26, 2018. The order "adjudged" that plaintiff had the right to proceed, albeit under an

13

amended complaint and declaration, directed that it deposit the alleged value of the property with the court, and appointed commissioners. Under these circumstances it was a final judgment satisfying the statute's requirements.

If defendant wanted to appeal that order, she was required to file her notice of appeal within forty-five days. See R. 2:4-1. Any other order entered by the motion judge was interlocutory, including the order granting reconsideration, which required for an appeal that plaintiff seek leave in accordance with Rule 2:2-3(b) within twenty days of its entry.[4] See R. 2:5-6. The only other judgment appealable of right would have been a judgment relating to the commissioners' valuation issued by the Superior Court after a trial. Suydam Inv'rs, 177 N.J. at 16.

Under these circumstances, we are constrained to dismiss defendant's appeal and not address her contentions about the bona fides of plaintiff's right to condemn. We are satisfied that defendant was aware of which property was being taken from the beginning of this action. We only observe that granting the motion to reconsider reinstated the matter to its status before dismissal on December 12, 2018, which meant plaintiff had the right to amend its pleading,

---

[4] As noted, the reconsideration order was entered on August 5, 2019. Defendant filed her Notice of Appeal on September 17, 2019, without leave, thirty-eight days after the order's entry.

which it has not yet done, and its declaration of taking, which it completed before the motion judge vacated the December 2018 order.

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0246-19T2